Dollie **MASSEY,** Petitioner/Appellant,

v.

**SHELBY COUNTY RETIREMENT BOARD,** Respondent/Appellee.

Court of Appeals of Tennessee, Western Section, at Jackson.

Feb. 21, 1991.

Application for Permission to Appeal Denied by Supreme Court June 10, 1991.

Asa H. Hoke of Asa H. Hoke & Associ- ates, Memphis, for petitioner/appellant.

Leila C. Taaffe, Shelby County Atty.'s Office, Memphis, for respondent/appellee.

TOMLIN, Presiding Judge, Western Section.

Dollie M. Massey ("Massey") has appeal- ed from a decree of the Chancery Court of Shelby County. That court affirmed the decision of the Shelby County Retirement Board ("Board") that denied disability re- tirement benefits to Massey. The chancel- lor reviewed the action of the Board pursu- ant to the common law writ of certiorari.

Massey raises four issues on appeal: Did the chancellor err: (1) in treating the writ as issued as a common-law writ rather than the statutory writ of certiorari; (2) in re- fusing to allow plaintiff to present evidence showing that the Board acted arbitrarily and capriciously; (3) in failing to find that the Board acted arbitrarily and capricious- ly; and (4) in not holding that "Plan A" of the Shelby County Retirement System vio- lated the provisions of Chapter 72 of the Private Acts of 1945? In oral argument counsel for Massey conceded that the ap-

propriate writ in the case under considera- tion was the common-law writ of certiorari. We therefore limit our consideration to the remaining three issues, which we resolve in favor of the Board.

Massey was employed as a deputy sher- iff with the Shelby County Sheriff's De- partment in 1979, working with female in- mates at the Shelby County Jail. In 1981, Massey was injured while on duty. During the course of a fight with two inmates, the backs of both her legs were cut by the sharp edge of a steel table. In the healing process she developed and apparently re- mains subject to a condition called "Keloid scarring." According to the proof, wheth- er or not a person is susceptible to this condition is not determinable until he or she receives a laceration.

As a result of her condition, Massey was assigned to various low-risk positions in the sheriff's department during 1984–1986 at the same pay rate she received as a deputy sheriff working with the inmates. The Keloid scarring caused Massey to become apprehensive about working in a position in the sheriff's department that would likely bring her in contact with inmates.

In December, 1986, she was offered a position as court bailiff, but inasmuch as it involved possible contact with inmates and raised the possibility of injury, she declined the position. She also declined to accept a position that would require her to serve warrants and subpoenas out of fear of injury that would result in additional scar- ring. Finally, she was offered a non-uni- form, non-enforcement clerical position at approximately thirty-five percent of the pay she received as a hazardous-duty depu- ty sheriff. She sought to accept this posi- tion conditionally, reserving the right to appeal to the Civil Service Commission for its determination of the propriety of the county offering a position at a substantial decrease in pay. When informed that her acceptance of the position would constitute a waiver of her right to appeal, she de- clined to accept it.

Massey was terminated by the sheriff's department for job abandonment. She la- ter applied for ordinary disability benefits.

Several months later, on the day of and immediately prior to a meeting of the Board, the Disability subcommittee of the Board met without Massey or her counsel present for the purpose of making a recommendation to the full Board concerning Massey's application for disability benefits under "Plan A" of the Shelby County Pension System.

Later the same day a hearing was held before the entire Board, with Massey and her counsel present. The subcommittee reported to the full Board that Massey was not qualified to receive ordinary disability benefits. The Board heard testimony from Massey and statements of her counsel and counsel for the Board. The Board also considered letters from four doctors concerning her condition. At the conclusion of the hearing, Massey's request for disability benefits was denied. This action followed.

## I. THE SCOPE OF REVIEW

The scope of review exercised by this Court necessarily depends upon whether the writ of certiorari was by common law or by statute. Under the common-law writ of certiorari, the scope of review of the chancellor, as well as this Court, is the same. Reversal or modification of the Board's action may be had only when the trial court determines that the Board acted in violation of constitutional and statutory provisions, exceeded its own statutory authority, followed an unlawful procedure, acted arbitrarily or capriciously, or reached a decision without any material evidence to support it. *See Hoover Motor Express Co. v. Railroad & Public Utilities Commission*, 195 Tenn. 593, 261 S.W.2d 233 (1953). The trial court does not weigh the evidence. With respect to the evidence represented before the Board, review by this Court is no broader or more comprehensive than that of the trial court. *See Watts v. Civil Service Board for Columbia*, 606 S.W.2d 274 (Tenn.1980). At the time Massey's petition was filed, there is no question that the common-law writ of certiorari was appropriate for the review of the Board's decision as to an employee's eligibility for retirement benefits. *See Love v. Retire-*

*ment System of the City of Memphis*, 12 TAM 43–11, 1987 WL 17246 (Tenn.App., W.S. September 21, 1987).

Initially, Massey argued that writ of certiorari was statutory in nature inasmuch as T.C.A. §§ 27–9–101, *et seq.* provides for review of "any board or commission functioning under the laws of this state." At oral argument, however, she conceded that such writ was by common law. Her counsel argued that notwithstanding this concession, the chancellor should have heard additional evidence as required by the Tennessee Administrative Procedures Act (APA), T.C.A. §§ 4–5–101, *et seq.* The APA has no application to this case. T.C.A. § 4–5–106(a) provides: "The provisions of this chapter shall not apply to ... county and municipal boards, commissions, committees, departments or officers." Massey's argument that the APA applies to this proceeding is without merit.

In addition, we are compelled to note that during oral argument, counsel for Massey contended that the action of the subcommittee in considering the matter prior to consideration by the full Board violated her due-process rights. An issue raised for the first time on appeal may not be considered by this Court. Rule 13(b), T.R.A.P. *See also Aleshire v. Aleshire*, 642 S.W.2d 729 (Tenn.App.1981), *aff'd* (Tenn.1982).

## II. THE FAILURE TO ENTERTAIN OTHER EVIDENCE

The chancellor reached his decision based upon the transcript of the record developed before the Board. Plaintiff sought to present to the chancellor "additional evidence" consisting of personnel and medical records of other employees of the Shelby County Sheriff's Department, as well as minutes of certain meetings of the Board. Plaintiff contended that the "additional evidence" would show that under the same or similar circumstances the defendant Board treated some employees differently than it treated plaintiff, and that this evidence would show that the Board acted "fraudulently, illegally, or arbitrarily."

While counsel for plaintiff stated to the court the nature and type of evidence he

sought to present, the record does not reflect that those documents were in fact shown to the chancellor, nor were they marked for identification. However, inasmuch as no objection was raised by counsel for the Board, we will consider that the documents were properly presented to the trial court.

In declining to entertain such evidence, the chancellor noted that "arbitrary, illegal, and/or capricious" refers to the Board's handling of the specific case before it, not how the Board handled this case as compared to some other case. He noted that under the common-law writ the court is to review the legality of the lower proceeding, and that the matter of arbitrariness or capriciousness must be shown in the record. We concur with the chancellor's ruling. What plaintiff, in essence, was trying to establish by the "additional evidence" goes to the sufficiency of the evidence. That is, plaintiff was attempting to establish that in other cases with the same or similar evidence the Board found the plaintiff to be disabled.

Whether or not there is any material evidence to support the action of the agency is a question of law to be decided by the reviewing court upon an examination of the evidence introduced before the agency. *Hoover Motor Express Co. v. Railroad & Public Utilities Commission*, 195 Tenn. 593, 261 S.W.2d 233 (1953).

In his article entitled "Review of Administrative Decisions by Writ of Certiorari in Tennessee," Judge Ben Cantrell, presently a member of the Middle Section of this Court, then Chancellor Cantrell, had this to say on this subject:

> In determining the question of whether new evidence may be introduced before the reviewing court in a proceeding under the common-law writ, a distinction must be drawn between the different types of legal questions which may be presented.
>
> Laying aside for the moment the question of sufficiency of evidence to support administrative fact findings, it may be stated generally that new or additional evidence may be received by the review-

ing court on the issue of whether the lower tribunal exceeded its jurisdiction or in some manner acted illegally, arbitrarily, or capriciously. The petition might allege, for example, that the lower tribunal's action was based upon some ulterior motive. Obviously new evidence may be introduced on such an issue which goes to the legality of the lower tribunal's action, because the reviewing court determines such issues as an original matter. On such an issue the reviewing court weighs the evidence before it and determines by preponderance of the proof whether the lower tribunal acted illegally or not.

> The situation is different, however, where the legal issue before the court is the sufficiency of the evidence to support an administrative fact-finding. On this issue no new evidence is admissible. The reviewing court is confined to the record as it existed before the lower fact-finding tribunal.

> Moreover, in reviewing this evidence the court does not engage in a reweighing of the evidence to determine whether the fact conclusion of the lower tribunal was right or not. The function of the reviewing court is limited to asking whether there was in the record before the fact-finding body *any* evidence of a material or substantial nature from which that body *could* have, *by reasoning from that evidence*, arrived at the conclusion of fact which is being reviewed. If there is such evidence in the lower record, the court must affirm the lower tribunal's fact-finding. To justify vacating a fact-finding there must be no evidence from which the lower body's finding could have been reached by reasoning from the evidence. If there was no such evidence, then the fact-finding is illegal, arbitrary, and capricious, and it is the duty of the reviewing court to vacate that finding.

B. Cantrell, *Review of Administrative Decisions by Writ of Certiorari in Tennessee*, 4 Mem.St.U.L.Rev. 19, 29–30 (1973) (emphasis in the original). We accordingly hold that this issue is without merit.

## III. THE AFFIRMATION OF THE ACTION OF THE BOARD

■ We have previously noted that the scope of review by this Court is the same as the scope of review of the trial court in this common-law certiorari case. As noted in *Watts, supra,* our responsibility is to examine the evidence presented before the Board to determine whether or not it has been guilty of arbitrary or capricious action or has acted without material evidence to support its decision. We do not weigh the evidence.

A review of the record made before the Board determines that a majority of the doctors' opinions concerning Massey's condition indicates that she probably should not be exposed to hazardous duty and thus an increased risk of injury that could produce more Keloid scarring. As to whether or not Massey was disabled so as to not be able to perform non-hazardous duty, there was a conflict in the medical evidence, but there was material evidence to the effect that she was not disabled so as to perform non-hazardous activities. Plaintiff was enrolled in the Shelby County "Plan A." Under this plan, the ability of a covered person to perform any type of "compensable activity" precludes a finding of disability, and therefore the recovery of any benefits. This Court is of the opinion that there was material evidence to support the action of the Board, as well as the finding by the chancellor that the Board did not act arbitrarily, illegally, or capriciously. Accordingly, this issue is without merit.

## IV. "PLAN A" AND THE PRIVATE ACT

Finally, plaintiff contends that "Plan A" of the Shelby County Retirement System has been promulgated in violation of Chapter 72 of the Private Acts of 1945. Pertinent portions of Chapter 72 read as follows:

Section 1. *Be it enacted by the General Assembly of the State of Tennessee,* That the purpose of this Act is to confer authority upon the Quarterly County Courts of all counties having a population of 300,000 or more by the Federal Census of 1940, or any subsequent Federal Census, if they elect and deem it expedient so to do, to provide a means whereby public employees who become superannuated or incapacitated as the result of age or disability, may be replaced by more capable employees, ... and at the same time to compensate ... those who become incapacitated, by making provision for their retirement....

Sec. 2. ... That the Quarterly County Courts ... are hereby authorized in their discretion and by proper resolution to establish a retirement or pension system ... and may likewise so provide for the disability and retirement ... to cover permanent, partial or temporary disabilities incurred by employees of such counties....

Sec. 3. ... The Quarterly County Courts may determine how the said contributions will be calculated and accumulated, the method of payment and who shall be the beneficiaries of said retirement or pension system or systems. The said Quarterly County Courts are authorized to make all administrative provisions necessary for the operation of said retirement or pension system or systems....

1945 Tenn.Priv.Acts ch. 72.

Under "Plan A," disability is defined as a disease, injury, or mental disorder which prevents the participant from engaging in compensable activities for which he/she is reasonably capable. "Compensable activities" is defined in "Plan A" as "employment including self-employment, and work activities of the Recipient which produce compensation or self-employment income which shall include gainful employment." Essentially, one is not disabled under "Plan A" if one can perform any other kind of job or employment for pay.

Plaintiff was discharged by the sheriff's department on the ground of job abandonment. She was offered and refused to accept three different jobs in the department, the first two of which involved some potential contact with inmates and caused her apprehension as far as a potential injury was concerned. The third was a clerical

position with the department, which carried with it a substantial reduction in pay.

Following her termination for job abandonment, plaintiff filed this claim for disability. However, the record also reflects that she is pursuing other litigation against the Civil Service Board of Shelby County on the basis of improper and unlawful demotion.

It readily appears that plaintiff has an employment dispute rather than a disability dispute. We find no basis in this record for the contention that "Plan A" is in contravention of the Private Act enabling the county to establish a pension system. This issue is without merit.

We therefore conclude that the chancellor did not err in any respect. The decree of the court below is affirmed. Costs in this cause on appeal are taxed to plaintiff, for which execution may issue, if necessary.

CRAWFORD and FARMER, JJ., concur.