IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS JULY 14, 2003

# LANEY BRENTWOOD HOMES, LLC v. EARL PRECHTEL, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
No. CH-00-1076-1     Walter L. Evans, Chancellor

No. W2003-00284-COA-R3-CV - Filed December 31, 2003

This case arises from the denial of Plaintiff's application for a building permit. Plaintiff appealed the Building Inspector's denial of said permit to the Board of Zoning Appeals, which upheld the denial. Plaintiff then appealed to the Chancery Court of Shelby County by way of common-law writ of certiorari. Again, the denial of the permit was affirmed. Plaintiff then sought our review of the denial. For the following reasons, we dismiss the instant appeal on the basis of mootness.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Dismissed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Larry E. Parrish, Memphis, TN, for Appellant

Edward L. McKenney, Jr., Memphis, TN, for Appellee

**OPINION**

**Facts and Procedural History**

On October 23, 1995, the Town of Collierville, Tennessee ("Town") entered into a Subdivision Development Agreement ("Agreement") with Raintree Development Company, LLC ("Raintree"), a limited liability company whose principals are Gerald Laney and Mark Streeter. The Agreement provided terms under which Raintree would develop 101 lots known collectively as Raintree Planned Development, Phase 1. Raintree's obligation under the Agreement, stated succinctly, was to lay the groundwork for the proposed subdivision so that building permits could subsequently issue to builders for the construction of houses. This groundwork included tasks such as installation of street lights, sidewalks, curbs and gutters, a sanitary sewer, water, grading, and roadway and drainage improvements. The Agreement also obligated Raintree to execute a bond in the amount of $1,335,000.00 guaranteeing faithful performance under the contract. (R. vol.1, p.29).

Finally, paragraph 38 of the Agreement addressed the possibility of Raintree's failure to fulfill its obligation:

> The Developer further understands that should he fail to complete any part of the work outlined in this Contract in a good and workmanlike manner as approved by the Town Engineer, the Town of Collierville shall reserve the right to withhold and withdraw all building permits and/or water and sewer service within the subdivision until all items of this Contract have been fulfilled by the Developer.

In October 1995, the bond amount was lowered to the amount of $100,000.00, with the stipulation that the final plat for the subdivision would not be recorded until such time as the $100,000.00 sufficed to cover the remainder of the improvements to be completed by Raintree under the Agreement .

Development of the Raintree Subdivision proceeded apace, and, on September 8, 1997, the Town of Collierville recorded the as-built plat of Raintree Subdivision with the Shelby County Register of Deeds. On September 10, 1997, the Town's Engineer advised the Building Inspector by letter that building permits could thereafter issue for Raintree Subdivision. The Building Inspector, acting pursuant to the Town's authorization, issued some seventy-five building permits from September 1997 to December 1999. During this time, however, problems arose with the development of the subdivision. A dispute developed between Raintree and its general contractor, Rose Construction, which resulted in the general contractor leaving the project before completion. In addition, many of the improvements already constructed by the general contractor, such as sidewalks, curbs, and roads, were found to be deficient and in need of correction. (R. vol.2, p.202). As such, the Town submitted a series of punch-lists to Raintree that outlined the deficiencies in need of correction. The corrections were not made, and, in late 1999, Town issued a final request to Raintree regarding the deficiencies. When Raintree failed to take action after this final request, Town attempted to call the letter of credit provided for in the Agreement. The Bank of Bartlett, who held the letter of credit, declined to pay the Town and dishonored the demand for payment. Thereafter, the Town's Director of Development, Fred Rogers, halted the issuance of building permits for the Raintree Subdivision. According to Town's counsel at the time, this moratorium on building permits was imposed pursuant to "the terms of the Subdivision Development Agreement, provisions of the Zoning Ordinances, and under the Town's general police powers. . . ."

On February 21, 2000, Laney Brentwood Homes, LLC ("Plaintiff") applied for a building permit to construct a single residence on lot 96 of the subdivision. This application was denied by the Building Inspector due to the moratorium imposed by Mr. Rogers, the Director of Development. On March 23, 2000, Plaintiff filed an appeal with the Board of Zoning Appeals ("BZA"), alleging that the Building Inspector erred in denying the building permit application. Plaintiff argued that the Subdivision Development Agreement did not give Town the authority to declare a moratorium on building permits in the Raintree Subdivision. Plaintiff also maintained that the Agreement did not provide a basis upon which the Building Inspector could deny a building permit. Plaintiff argued, instead, that the requirements of Town's Zoning Ordinance § 11-1003 provide the only basis upon

which the Building Inspector may deny a permit. This ordinance details various plans and specifications of the proposed building that must be submitted with an application for a permit. According to Plaintiff, the application for lot 96 complied with these provisions, and, as such, the Building Inspector was compelled to issue the building permit. After conducting a hearing on the matter, the BZA ruled in favor of the Town, finding that paragraph 38 of the Raintree Subdivision Development Agreement empowered the Building Inspector "to withhold and withdraw all building permits and/or water and sewer service within the subdivision until all items of this Contract have been fulfilled by the Developer." The BZA further found that the Town was authorized to deny the building permit as an exercise of its general power to protect the health, safety, and property of its citizens.

Plaintiff then filed a petition for writ of certiorari with the Chancery Court of Shelby County, seeking review of the BZA's administrative decision. The lower court conducted a hearing on September 6, 2000, at which Plaintiff reiterated the arguments it had previously raised at the BZA hearing. The lower court found in favor of the Town, finding specifically that the Subdivision Development Agreement was "properly considered" by the BZA and that said Agreement furnished a basis upon which the Building Inspector could properly deny Plaintiff a building permit. Plaintiff then filed a motion to alter or amend the judgment, alleging numerous bases of error. The lower court denied this motion, and Plaintiff then timely filed the instant appeal.

## Issues

Plaintiff raises the following issue, as we perceive it, for our review:

I. Whether the lower court erred in finding that paragraph 38 of the Subdivision Development Agreement empowered the Town of Collierville, through its designated officials, to deny Plaintiff a building permit.

The Town of Collierville raises an additional issue for our consideration:
II. Whether the instant appeal should be dismissed for mootness.

## Standard of Review

The instant case comes to us from a common law writ of certiorari, which is the well-established vehicle for reviewing the decisions of local boards of zoning appeals. *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990). "Under the common law writ of certiorari, the scope of review of the chancellor, as well as this Court, is the same." *Massey v. Shelby County Ret. Bd.*, 813 S.W.2d 462, 464 (Tenn. Ct. App. 1991). The board's decision will only be reversed or modified if it is determined that the board acted in violation of constitutional or statutory provisions, exceeded its own statutory authority, followed an unlawful procedure, acted arbitrarily or capriciously, or reached a decision without any material evidence to support it. *Id*.

-3-

**Mootness**

We will first address Town's contention that the instant appeal should be dismissed for mootness. On May 2, 2003, Town filed a motion to consider certain post-judgment facts that give rise to the claim of mootness. Town's motion contained a copy of a warranty deed, executed by Plaintiff, that transferred ownership of lot 96 of the Raintree Subdivision to Delee Upchurch Homes, LLC on June 18, 2002. The motion also included documentation indicating that a building permit was issued for this lot and that a private residence has been constructed thereon. According to Town, these facts render the instant appeal moot because the denial of Plaintiff's building permit application for lot 96 was the controversy giving rise to this case. Plaintiff, on the other hand, argues that the instant case falls within one of the exceptions, enumerated in *Dockery v. Dockery*, 559 S.W.2d 952 (Tenn. Ct. App. 1977), that permits a court to hear a case which has become moot as to the litigants.

> In *Dockery*, this Court explained the general doctrine of mootness as follows:
> The courts in this State have consistently followed the principle that to invoke the jurisdiction of the court it is primarily essential that there be a genuine and existing controversy requiring present adjudication of present rights. Although the case may have originally presented such a controversy, if before decision it has lost that essential character through the act of the parties or some other cause, it is the duty of the court, upon presentment of that fact, to dismiss it.

*Dockery*, 559 S.W.2d at 954. This doctrine ensures that our courts will not render advisory opinions or otherwise determine legal questions in an abstract framework. It does so by prohibiting courts from deciding legal issues "however important, or however simple they may be, upon the supposition that they may hereafter arise. They may never do so." *Knott v. Stewart County*, 207 S.W.2d 337, 339 (Tenn. 1948). A case may generally be considered moot when no meaningful relief can be afforded to the prevailing party. *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996). The present case involves the common law certiorari review of the BZA's decision to uphold the denial of Plaintiff's building permit application for lot 96. As such, the only relief available to Plaintiff, should it prevail, is for this Court to order the issuance of said permit. It appears, however, that Plaintiff no longer owns lot 96. It further appears that a building permit has been issued for that lot and that a private residence has already been constructed thereon. In light of these developments, the present appeal is clearly moot as to the litigants.

Plaintiff, however, urges us to hear the appeal on the basis of one of the *Dockery* exceptions. Our discussion of certain mootness exceptions in *Dockery* states, in relevant part:

> [A]n appellate court in Tennessee may entertain an appeal for final determination if it involves questions of public interest even though it has become moot so far as the particular action or parties are concerned . . . "The decision as to whether to retain a moot case in order to pass on a question of public interest lies in the discretion of the court and generally a court will determine a moot question of public importance if

-4-

it feels that the value of its determination as a precedent is sufficient to overcome the rule against considering moot questions." 5 Am.Jur.2d, Appeal and Error, s 768, pp. 210-211. Because the general rule is to dismiss an appeal which has become moot, with the retention of such cases in the public interest being the exception to the rule, courts are inclined to refuse dismissal only under exceptional circumstances where the public interest clearly appears . . . Generally public interest "means something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve for their future conduct as individuals." 132 A.L.R. 1189. The types of issues the courts are likely to resolve despite their mootness are: (1) questions that are likely to arise frequently; (2) questions involving the validity or construction of statutes; (3) questions relating to elections; (4) questions relating to taxation, revenue, or governmental financial affairs; (5) questions relating to the conduct of public officers or bodies; (6) questions involving the governmental regulation of public utilities; and (7) questions which must necessarily become moot before the appeal can be heard.

*Dockery*, 559 S.W.2d at 954-55. Plaintiff argues that the present case falls within at least three of the enumerated examples. We disagree.

The present case is most intimately concerned with the interpretation and effectiveness of a contract provision. This case, at best, could be considered to involve a question relating to the conduct of public officers or bodies, involving as it does the decision of the BZA. This single tenuous factor, however, is not enough to persuade us to exercise our discretion to hear this appeal. If we were to hold otherwise, any challenge to the action of an administrative agency, without more, would survive the general scope of mootness. Such a holding would not be in keeping with the admonition that courts should refuse dismissal "only under exceptional circumstances where the public interest clearly appears." *Id*. at 955. We also note, as a final matter, that we are not persuaded by Plaintiff's contentions that this case involves issues likely to arise frequently or which must necessarily become moot before the appeal can be heard. It was the action of Plaintiff, not Town, that caused this controversy to become moot. There is no reason that the denial of a building permit must *necessarily* become moot before the appeal can be heard. Nor does the record indicate that the issues in this case are likely to arise frequently. It appears that this case involves an isolated dispute over a single Subdivision Development Agreement, and it further appears that building permits are once again issuing pursuant to that Agreement. In sum, we do not find that the present appeal involves issues of sufficient public importance and precedential value to overcome the general proscription against considering moot questions and rendering advisory opinions.

-5-

## Conclusion

For the foregoing reasons, we dismiss the issues raised on appeal by Plaintiff for mootness. Costs of this appeal are taxed to the Appellant, Laney Brentwood Homes, LLC, and its surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE