IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 27, 2010 Session

## MELVIN CHRISTMAS v. THE TOWN OF SMYRNA

**Appeal from the Chancery Court for Rutherford County**
**No. 08-0977CV     Robert E. Corlew, III, Chancellor**

---

**No. M2009-02589-COA-R3-CV - Filed December 6, 2010**

---

Property developer applied to the Town of Smyrna for a rezoning request for a planned development. The request was initially approved by the Planning Commission, but the Town Council later voted to deny the request. The developer appealed by writ of certiorari to the Rutherford County Chancery Court, which affirmed the decision. On appeal, the developer asserts that the Town Council's action was arbitrary and capricious. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, J.J., joined.

George Arthur Dean, Nashville, Tennessee, for the appellant, Melvin Christmas.

Douglas Berry, Nashville, Tennessee, for the appellee, the Town of Smyrna.

**OPINION**

### I. Factual and Procedural Background

Melvin Christmas is the owner of a parcel of land located on Rocky Fork Road in Smyrna, Tennessee. The property consists of 11.69 acres and is zoned R-3, medium density residential. In January of 2008, he applied to the Smyrna Municipal Planning Commission

1

for approval to rezone the land from R-3 to PRD[1] in order to construct a multi-family residential development consisting of 47 duplex, triplex, and quadraplex units. The plan called for two phases of development: Phase I would consist of 17 units, and Phase II would consist of 30 units.

The rezoning request was brought before the Planning Commission on eight occasions.[2] Throughout the course of those meetings, adjustments and modifications to the development plan were made in response to comments from members of the Planning Commission. After Mr. Christmas submitted the final request, he met with the Planning Commission at its May 1, 2008 meeting. At that meeting, an extensive discussion was held regarding the sewer systems proposed for both phases of the development.

---

[1] PRD is defined as:

> Any planned development for a land use, uses, or combination of uses permitted by right or by special exception in the R-1, R-2, R-3, R-4, R-5, and R-6 districts as indicated in Article V of this Ordinance shall be classified as and shown on the official zoning map as a PRD, Planned Residential District.

SMYRNA, TENN., ZONING ORDINANCE art. IV, § 4.072 (2009).

[2] The rezoning request had originally been introduced by James Scruggs at the Planning Commission's August 2, 2007 meeting. The meeting minutes and transcripts indicate that he was an owner and developer of the property, but nothing else in record explains his relationship to the proceedings, and he is not a party to this lawsuit. According to the Planning Commission meeting minutes, the rezoning request was deferred for 30 days. Mr. Scruggs presented the request at the Planning Commission's September meeting, but the Planning Commission unanimously carried a negative recommendation. Mr. Scruggs again presented the request at the October 2007 meeting, and the minutes reflect that a unanimous negative recommendation was again made by the Planning Commission. Mr. Christmas submitted the rezoning request to the Planning Commission at its January 2008 meeting; how he became involved with the rezoning request is not evident from the record, but the January minutes list him as an owner and developer of the property. At the conclusion of the discussion at the January meeting, the request was deferred to the February Planning Commission meeting in order to obtain storm water, grading, and engineering information. The minutes indicate that the rezoning request was on the agenda at the February and March Planning Commission meetings, but they show that the request was withdrawn by Mr. Christmas at both meetings. Mr. Christmas presented the rezoning request to the Planning Commission at its April 3, 2008 meeting. After discussion, a motion to recommend approval of the request to the Town Council was made, but it failed by a vote of 3-4. Despite the motion failing, the item was apparently submitted to the Town Council at its April 8 meeting. Although there is a transcript of the discussion at the meeting, there are no minutes, and it is not clear why or how the item was brought before the Town Council. Regardless, the Town Council voted to deny the application. After the April meetings with the Planning Commission and Town Council, Mr. Christmas modified his development plan and resubmitted the rezoning request. The request was heard at the Planning Commission's May 1 meeting and, subsequently, the Town Council's May 13 meeting.

2

The sewer system in Phase I was designed to be a gravity sewer[3] which would connect to the existing sewer main on Rocky Fork Road. Because the natural lay of the land would not support the proposed system, the plans called for utilizing a "cut and fill" technique to make the system in Phase I operable.[4] For Phase II, however, Kevin Rigsby, Smyrna's Town Planner, recommended that the Commission require Mr. Christmas to obtain easements across adjoining properties, thereby allowing the gravity sewer to utilize the existing drainage way. Utilizing the existing drainage way would eliminate the need for a pumping station[5] and "cut and fill" at the Phase II development site. After extensive discussion, the Planning Commission voted 5-2 to recommend the Town Council accept the proposed development, and it imposed the following special conditions in accordance with Mr. Rigsby's recommendation:[6]

> 6. A sewer/PUD easement must be granted for gravity sewer as part of Phase II of the development.
>
> . . . .
>
> 9. Phase II cannot be built until gravity sewer, not involving cut and fill, is

---

[3] Conventional gravity sewers are large networks of underground pipes that use gravity to convey wastewater from individual households to a centralized treatment facility. They are designed to maintain self-cleansing velocity, and a constant downhill gradient must be guaranteed along the length of the sewer to maintain self-cleaning flows. If a downhill gradient cannot be maintained, a pump station may be necessary. *See* ELIZABETH TILLEY ET AL., SWISS FEDERAL INST. OF AQUATIC SCI. AND TECH. (EAWAG), COMPENDIUM OF SANITATION SYSTEMS AND TECHNOLOGY 87–88 (2008), http://www.eawag. ch/forschung/sandec/publikationen/sesp/dl/compendium_high.pdf.

[4] As testified throughout the course of the meetings, cut and fill is a method of construction in which earthen material is excavated in order to create embankments. *See also* Encyclopædia Britannica Online, http://www.britannica.com/EBchecked/topic/147458/cut-and-fill-mining (discussing the use of cut-and-fill in underground mining) (last visited Nov. 30, 2010). In the context of a gravity sewer, the technique could be employed to create an embankment with an artificial slope, which would enable the gravity sewer to maintain a downhill gradient and function without a pumping station.

[5] According to Jerome Dempsey, the Smyrna Engineer of Record, the Utility Department opposed the construction of a pumping station.

[6] Under the Municipal Zoning Ordinance of Smyrna ("MZO"), complete applications for planned development are submitted to the Planning Commission for review. The MZO specifies that "[w]ithin thirty (30) days of the date of the Planning Commission meeting at which the planned development is first considered, the Planning Commission shall make a recommendation to the Town Council for approval, disapproval, or *approval subject to special conditions*." SMYRNA, TENN., ZONING ORDINANCE art. IV, § 4.076(C) (2009) (emphasis added).

available through the natural draw,[7] such gravity sewer being subject to staff approval and approval by the Town's engineer of record.

Following the Planning Commission's recommendation for approval, the application was heard by the Smyrna Town Council at its May 13 meeting. After extensive discussion, the Council voted unanimously to deny the application.

Mr. Christmas thereafter filed a writ of certiorari with the Rutherford County Chancery Court. The Court affirmed the decision, concluding that the entire record fairly supported a conclusion that the Town Council rejected the proposal because of incomplete information regarding the sewage system and a lack of detailed plans to sewer Phase II; the court held that the Town Council's denial of the application was not arbitrary or capricious, or otherwise illegal.

## II. Standard of Review

Judicial review of an action by an administrative body is by way of the common law writ of certiorari. Tenn. Code Ann. § 27-8-101; *see also McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990); *Demonbreun v. Metropolitan Bd. Of Zoning Appeals*, 206 S.W.3d 42, 46 (Tenn. Ct. App. 2005). In such a review, the action of the administrative body may be reversed or modified only upon a determination that the action was: (1) in violation of constitutional or statutory provisions; (2) in excess of statutory authority; (3) an unlawful procedure; (4) arbitrary or capricious; or (5) unsupported by material evidence. *Demonbreun*, 206 S.W.3d at 46 (citing *Massey v. Shelby County Retirement Bd.*, 813 S.W.2d 462, 464 (Tenn. Ct. App. 1991)). Action that can be characterized as falling into any of the above categories warrants reversal or modification. *McCallen*, 786 S.W.2d at 642; *Demonbreun*, 206 S.W.3d at 46; *Massey*, 813 S.W.2d at 464. Our scope of review is no broader than that of the trial court. *Demonbreun*, 206 S.W.3d at 46.

## III. Analysis

Mr. Christmas asserts that because the Town Council did not state a reason for its denial, he does not know why his rezoning request was denied. He argues that, because he has complied with all applicable zoning ordinances, a lack of current sewer availability for a subsequent phase of a planned development is not a valid consideration for approval or disapproval. Further, he asserts that there was no evidence to support the Town Council's decision, and the denial was arbitrary and capricious. We will consider each issue in turn.

---

[7] A gravity sewer with natural draw would rely on the natural lay of the land to maintain a downhill gradient, as opposed to artificially constructed embankments created by cut and fill.

## A. Reason for the Denial

When the Town Council denied the rezoning request, a specific reason was not given, but the transcript of the May 2010 meeting reveals that the discussion was dominated by concerns regarding the development's proposed sewer system and, more specifically, sewer availability for Phase II. Mr. Rigsby stated that, in accordance with the conditions imposed by the Planning Commission, Phase II could not be developed until easements allowing Mr. Christmas to utilize an existing drainage way[8] were obtained from a neighboring landowner, or until an adjoining tract was developed. He further stated that, as of the date of the meeting, Mr. Christmas had been unable to obtain those easements, and no adjoining tract was developing a sewer system that Mr. Christmas could utilize.

Several of the members of the council noted that construction on Phase II would be indefinitely postponed because of the inability of Mr. Christmas to show that he could comply with the conditions imposed by the Planning Commission if approval for the development was granted. Other discussion centered on the extent to which residents in Phase I would suffer the loss of planned common areas in Phase II[9] and the effect on surrounding properties if Phase II was not developed.

Considering the entire discussion of this matter at the Town Council meeting and in the context in which the comments were made, we agree with the trial court that the Town Council denied the request based on concerns about the sewer system.

## B. Consideration of Lack of Sewer in Phase II

Mr. Christmas asserts that, inasmuch as he complied with the applicable provisions in the MZO, the Town could not consider the lack of sewer in Phase II in evaluating his rezoning request.

The Planning Commission and the Town Council are given wide discretion in the Smyrna Municipal Zoning Ordinance ("MZO") to evaluate the merits of rezoning requests for planned developments. Article IV section 4.070 contains a broad statement of purpose regarding the purpose of planned developments:

---

[8] The existing drainage way provided the only option for constructing a gravity sewer that utilized the natural draw.

[9] Mr. Rigsby responded that he had "looked at that" and "fe[lt] like there is an adequate common area in Phase One to serve the 17 units that are proposed."

The purpose and intent of this section is to encourage *the total planning of tracts of land consistent with the long-range general comprehensive plan of the Town*, encourage innovations in design and the application of sound design principles, provide a framework within which an effective relationship of different land uses and activities can be planned on a total basis, provide a harmonious relationship with surrounding development, minimizing such influences as land use incompatibilities, heavy traffic and congestion, and excessive demands on planned and existing public facilities, and provide a means of developing areas of physiographic or other physical features to enhance natural beauty and other attributes. *This section shall only be used for planned developments upon determination by the Planning Commission and Town Council that the proposed development is in harmony with the purpose and intent as stipulated.*

SMYRNA, TENN., ZONING ORDINANCE art. IV, § 4.070 (2009) (emphasis added). In addition, Article IV, section 4.071 governs how the Town approves phased developments. Section 4.071 states:

The Planning Commission *may permit* the development to progress in phases and sections, *provided, each phase or section of the development is so planned and so related to existing surroundings and available facilities and services* that failure to proceed to subsequent stages will not have an adverse impact on the initial phases or sections of the planned development or its surroundings.

SMYRNA, TENN., ZONING ORDINANCE art. IV, § 4.071(E)(2) (2009) (emphasis added).

The record shows that the Town Council acted pursuant to the authority granted it in the MZO. Section 4.070 provides the Town Council with authority to evaluate PRD rezoning requests by considering more than the list of factors contained in the MZO; it enables the Town Council to evaluate whether "the total planning of tracts of land" is consistent with the Town's long-range plan. Furthermore, while the MZO allows for phased development, the emphasized language in Section 4.071 indicates that discretion to permit phasing lies with the Planning Commission, which "may permit" phased development in light of "existing surroundings and available facilities and services." Whether the lack of sewer for Phase II and the inability to proceed with its construction comports with the Town's long-range plan or "is in harmony with [the long-range plan's] purpose and intent" are matters specified in the MZO to be considered in acting on a rezoning request. The Town Council's consideration of such matters in acting on Mr. Christmas' request was not arbitrary or capricious.

6

### C. Sufficiency of the Evidence for Denial

Mr. Christmas asserts that the decision to deny the rezoning request is not supported by the evidence and is, therefore, arbitrary and capricious.

In determining whether the Town Council's action was arbitrary and capricious we do not reweigh the evidence or scrutinize the intrinsic correctness of the decision. *McCallen*, 786 S.W.2d at 642. Instead, we must determine whether the record "contain[s] 'such relevant evidence that a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Hedgepath v. Norton*, 839 S.W.2d 416, 421 (Tenn. Ct. App. 1992) (quoting *Pace v. Garbage Disposal Dist.*, 390 S.W.2d 461, 463 (1965)); *see also Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 (Tenn. Ct. App. 2000). If there is no evidence to support the action of an administrative board, it is arbitrary. *Sexton v. Anderson County*, 587 S.W.2d 663, 667 (Tenn. Ct. App. 1979).

The record does not support a finding that the Town Council acted arbitrarily or capriciously in denying the rezoning request. Consideration of the lack of sewer, and by extension the possibility that Phase II could not be built, was proper under the MZO. At the time of the meeting, Mr. Christmas could not show how or when development of Phase II might occur due to his inability to provide a gravity sewer in accordance with the Planning Commission's conditions. Accordingly, the evidence supports the Town Council's denial of the application.

## IV. Conclusion

We find the Town Council's denial of the rezoning request was based on concerns regarding the development's proposed sewer system. In light of the Municipal Zoning Ordinance, consideration of the sewer system was proper, and we find evidence in support of the Town Council's decision. Accordingly, the Town Council did not act arbitrarily or capriciously, and the decision of the Rutherford County Chancery Court is AFFIRMED.

_____
RICHARD H. DINKINS, JUDGE