# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 11, 2011 Session

## RICHARD JENNINGS v. CITY OF SMITHVILLE, ET AL.

### Appeal from the Chancery Court for Dekalb County
### No. 2010017     Ronald Thurman, Chancellor

---

### No. M2010-02442-COA-R3-CV - Filed August 11, 2011

---

The Board of Mayor and Aldermen of the City of Smithville suspended and ultimately terminated the chief of police because they were unhappy with his efforts to combat the drug and crime problems in the City. The police chief filed a writ of certiorari and asked the trial court to order the City to reinstate him because he was terminated without cause. The trial court concluded there was sufficient evidence in the record to justify the City's decision and dismissed the complaint with prejudice. The police chief appealed, and we conclude the trial court did not abuse its discretion in dismissing the petition for writ of certiorari.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Kerry Knox, Thomas H. Castelli, Murfreesboro, Tennessee, for the appellant, Richard Jennings.

Daniel Hurley Rader, IV, Cookeville, Tennessee, for the appellees, City of Smithville and Smithville Board of Mayor and Aldermen.

## OPINION

### I. BACKGROUND

Richard Jennings was the chief of police for the City of Smithville (the "City") from 1994 until sometime in 2004, and then again from 2007 until 2009. On September 14, 2009, the City of Smithville Board of Mayor and Alderman ("BOMA") held a meeting, referred to as a workshop, to discuss, among other things, Mr. Jennings' performance as the chief of police. Mr. Jennings participated in this meeting, but the record does not indicate whether

or not he had any advance notice of the issues to be discussed at the meeting.

## A. WORKSHOP HELD ON SEPTEMBER 14, 2009

During the meeting, Mr. Meeks, one of the aldermen, asked Mr. Jennings questions about programs Mr. Jennings had in place to combat Smithville's problems with drugs and theft. Mr. Jennings admitted he did not have any specific programs in place and said he did not have enough money in the budget to implement such a program or to pay overtime to his officers to put such a program into place. Mr. Jennings explained that his budget had been cut from the previous year, but Mr. Meeks disputed this by stating the police budget dated June 30, 2010, was nearly $28,000 more than it had been the previous year. The mayor confirmed this by stating no department in the city experienced a budget cut for the 2009-10 year.

Mr. White, another alderman, then started discussing a meeting he had had with Mr. Jennings a year earlier to discuss the crime and drug problem in Smithville. At that time Mr. Jennings had said he was short-handed. The BOMA responded by hiring another officer. Mr. Jennings then indicated he still needed an additional officer before he would be able to put a program into effect to combat the drug problem. In an effort to provide Mr. Jennings with the staff he needed, the BOMA hired another officer a couple of months later. Mr. Jennings indicated during the workshop that he has been able to do some drug stings after these two additional officers were hired, but not as much as he would like.

Mr. Meeks stated that Mr. Jennings has eleven officers, which is two or three more than the City had in the three years before Mr. Jennings became the police chief in 2007. Mr. Meeks suggested Mr. Jennings should be able to put concrete programs into effect to address the crime and drug problems in Smithville with that number of officers. Mr. Jennings objected, stating he has only nine officers on his staff. Mr. Meeks then listed the officers included on Mr. Jennings' schedule, which totaled eleven. Mr. Jennings offered no explanation for why he did not know the number of officers in his department.

Mr. White then discussed the fact that he has had some complaints from members of the community about the police officers. Mr. White explained that some individuals have complained they do not feel comfortable talking with the officers and fear retaliation by them.

## B. LETTER DATED NOVEMBER 12, 2009

By letter dated November 12, 2009, the City notified Mr. Jennings that he was being suspended without pay, pending termination. The City informed Mr. Jennings in the letter that the reason for his suspension was "Dereliction of Duties/Negligence." The City then listed eleven reasons supporting its suspension of Mr. Jennings:

1.   In the past two years, as Police Chief, you have not developed a comprehensive plan to combat the crime problems in the City of Smithville, as evidenced by your admission to the board at the workshop of September 14, 2009. You have not reached out to other agencies for help in combating these problems.

2.   You were given two additional officers by the previous board with your promise that you then would be able to do drug investigations. To date, this has not happened.

3.   At the workshop on September 14, 2009, you did not know how many officers you had employed in the department, as evidenced by the DC of the meeting.

4.   You have 4 or 5 officers – including yourself and the investigator-on-duty on the day shift. You could have used some of these officers to work drug operations.

5.   Your claim that the police department's budget has been cut is not substantiated by the 2008-2009 city budget. In fact, there was an increase in the police department's budget over the previous year's budget. Also, your claim that all of your overtime has been cut is not true. You are still having overtime in your department.

6.   There has been little progress made toward having a better-trained Police Force in specialized areas.

7.   Community relations between your office and the public have deteriorated over the last two years.

8.   You have not been a "working chief" out patrolling, issuing traffic tickets, answering calls for service, and making arrests.

9.      You have authorized the use of a police vehicle for the transportation of civilians out of the area of authority of the Smithville Police Department.

10.     It is the responsibility of all department heads to be available for call out at all times. You advised that you turn off your city cell phone when you leave for the day.

11.     You have demonstrated lack of adequate supervision of officers.

## C. DISCIPLINE BOARD HEARING NOVEMBER 17, 2009

On November 17, 2009, a three-man Discipline Board was convened to consider Mr. Jennings' suspension and pending termination. The board consisted of the Mayor, Mr. Meeks, and Mr. Hendrixson, who was the Secretary/Treasurer. Mr. Jennings attended this meeting and was given the opportunity to respond to the City's letter dated November 12. Mr. Jennings read a prepared statement that included the following:

I have received the allegations lodged against me by Police Commissioner Meeks. If these allegations were true and if you looked at them individually or all together, they do not rise -- remotely rise to the level of cause that would require my termination from the City of Smithville. I've operated at all times within the scope of my authority as Police Chief.

The Discipline Board voted 2 to 1 to suspend and terminate Mr. Jennings from the position of Chief of Police.

## D. BOARD OF ALDERMEN HEARING DECEMBER 7, 2009

Mr. Jennings then requested a hearing before the full Board of Alderman at its next regular meeting, which took place on December 7, 2009. During this meeting, three community members addressed the board and expressed their concern about how the City was treating Mr. Jennings. They each expressed their satisfaction with Mr. Jennings as the Chief of Police and their hope that he would be retained in that position. Next, Mr. Jennings' attorney elicited testimony from Mr. Jennings to respond to the City's stated reasons for its decision to terminate Mr. Jennings:

Q:      Chief Jennings, Item No. 1 states that in the past two years as Police Chief, you have not developed a comprehensive plan to combat the crime problems in the City of Smithville, as evidenced by your

admission to the Board at the workshop of September 14, 2009. You have not reached out to other agencies for help in combating these problems. Can you explain to the Board when it was that you were asked to develop a comprehensive plan to combat the crime problems in Smithville?

A:     I've never been asked to do that.

Mr. Jacobs was one of the aldermen at this meeting, and he stated that everyone on the Board has gone to Mr. Jennings and begged him to make changes within his department to combat the drug problem and put more effort into crime investigation, which he described as being at zero for some time in their county. At the end of the hearing four aldermen voted to terminate Mr. Jennings. One alderman abstained. The Mayor did not cast a vote.

## II. TRIAL COURT PROCEEDINGS

Mr. Jennings then filed a petition for writ of certiorari with the Chancery Court of DeKalb County. Mr. Jennings asserted the decision by the BOMA to terminate him was fraudulent, arbitrary, and capricious. Mr. Jennings asked the trial court to order the BOMA to restore him to his position as Chief of Police for the City of Smithville.

Following a hearing on September 24, 2010, the trial court made the following findings of fact:

> The Court finds that the issues leading to Chief Jennings' termination from the City of Smithville arise from problems with drugs and burglary in Smithville, Tennessee. Both sides recognized these issues as problems . . . . The Court found that Councilman White had discussed this problem with Chief Jennings the year before, and that additional officers were hired and the problems were still there. . . . [T]he overtime limitation was placed after these additional hires were made because the City was still having significant overtime within the police department but were not seeing satisfactory results relating to the drug and burglary problems to justify the overtime.

> The Court finds that the November 12, 2009 letter apprised Chief Jennings of the reasons for his suspension and complied with any due process requirement of notice, and that Chief Jennings requested and subsequently had a hearing before the Board of Aldermen on December 7, 2009. The Court finds that, at that December 7, 2009 meeting, multiple members of the Board discussed the problems and they referenced the discussion in the September

14, 2009 Workshop. The Court finds from the record that the Board was not satisfied with the efforts Chief Jennings made to address these problems, if any, subsequent to that Workshop, and the Board's dissatisfaction with Chief Jennings' performance was the reason for the termination.

The court then reached the following conclusions of law:

> The Court does not find that the Board acted fraudulently, illegally, arbitrarily or capriciously. . . . The Court finds from looking at what was discussed at the September 14, 2009 Workshop and in the suspension letter and from the discussion that took place at the December 7, 2009 Meeting, the chief issue is Chief Jennings' efforts to handle, or his failure to handle, the drug and burglary problem in the City of Smithville. The Court further finds that the Board was dissatisfied with Chief Jennings' efforts, and this dissatisfaction led to Chief Jennings' termination. The Court finds there is material evidence in the record to support and justify the Board's action in terminating Chief Jennings.

> It is therefore ORDERED, ADJUDGED, AND DECREED that the decision of the City of Smithville Board of Mayor and Aldermen is affirmed in all respects. The Court finds that this matter should be dismissed with full prejudice.

### III. ISSUES ON APPEAL

Mr. Jennings appealed the trial court's dismissal of his petition to the Court of Appeals, arguing the trial court erred in concluding his termination was supported by cause. He also argues the trial court erred in considering the transcript of the workshop held in September, suggesting the transcript should not be considered part of the administrative record.

### IV. ANALYSIS

#### A. STANDARD OF REVIEW

The common law writ of certiorari provides an avenue for a court to review an administrative decision. Tenn. Code Ann. §27-8-101; *Demonbreun v. Metropolitan Bd. of Zoning Appeals*, 206 S.W.3d 42, 46 (Tenn. Ct. App. 2005). It is an extraordinary judicial remedy and is not available as a matter of right. *B & B Enterprises of Wilson Co. v. City of Lebanon*, 2004 WL 2916141, at *2 (Tenn. Ct. App. Dec. 16, 2004) (citing *Robinson v.*

-6-

*Traughber*, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999), *Flite v. State Bd. of Paroles*, 925 S.W.2d 543, 544 (Tenn. Ct. App. 1996), and *Boyce v. Williams*, 389 S.W.2d 272, 277 (Tenn. 1965)).

When a trial court reviews an administrative decision, the action of the administrative body may be reversed or modified only if the court determines the action was: "(1) in violation of constitutional or statutory provisions; (2) in excess of statutory authority; (3) an unlawful procedure; (4) arbitrary or capricious; or (5) unsupported by material evidence." *Demonbreun*, 206 S.W.3d at 46 (citing *Massey v. Shelby County Retirement Bd.*, 813 S.W.2d 462, 464 (Tenn. Ct. App. 1991)); *Christmas v. Town of Smyrna*, 2010 WL 4962900, at *2 (Tenn. Ct. App., Dec. 6, 2010). Additionally,

> In proceedings involving a common law writ of certiorari, illegal, arbitrary, or fraudulent actions include: 1) the failure to follow minimum standards of due process; 2) the misrepresentation or misapplication of a legal standard; 3) basing a decision on ulterior motives; and 4) violating applicable constitutional standards.

*Harding Academy v. the Metropolitan Government of Nashville and Davidson County*, 222 S.W.3d 350, 363 (Tenn. 2007) (citing *Hoover, Inc. v. Metro Bd. of Zoning Appeals,* 924 S.W.2d 900, 905 (Tenn. Ct. App. 1996)).

On appeal, the scope of our review is no broader than that of the trial court. *Demonbreun*, 206 S.W.3d at 46; *Christmas*, 2010 WL 4962900, at *2. We review the trial court's decision to grant or deny relief pursuant to a petitioner's common law writ under the abuse of discretion standard. *B & B Enterprises of Wilson Co.*, 2004 WL 2916141, at *2 (citing *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2002) and *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2002)).

### B. THE BOMA'S DECISION WAS SUPPORTED BY CAUSE

Section 4-205(7) of the Code of Ordinances for the City of Smithville provides in part:

> The City of Smithville may dismiss an employee for just cause that is for the good of the city service. Reasons for dismissal may include, BUT SHALL NOT BE LIMITED TO: misconduct, negligence, incompetence, insubordination, unauthorized absences, falsifications of records, violation of any of the provisions of the charter, ordinances, or these rules.

> With the exception of a Reduction Force (RIF), full time employees and

non-elected officials will be terminated only for "cause." When it has been determined that an employee's conduct warrants termination, the department head, with the concurrence of the mayor, will suspend the employee, without pay, until a hearing can be conducted. When an employee is suspended pending termination, a hearing will automatically be held within three (3) working days of the suspension. The hearing will be conducted by a board consisting of the mayor (chairman), department commissioner, and the secretary-treasurer. The employee will be afforded an opportunity to state his/her case and explain his/her position in the matter. At the conclusion of the hearing, the board will decide whether the suspension was warranted. . . . If the board upholds the suspension, the employee is terminated. If the employee is not satisfied with the action of the hearing board, the employee may, in writing, request a hearing before the board of mayor and aldermen at its next scheduled meeting.

Mr. Jennings does not argue the City and the BOMA failed to follow the procedure set forth above prior to terminating him. He argues only that the City and the BOMA did not have cause to dismiss him. We have addressed the meaning of "cause" in the context of dismissing an employee for cause in the case *Lawrence v. Rawlins*, 2001 WL 76266 (Tenn. Ct. App. Jan. 30, 2001). In that case we wrote:

Cause exists only where the termination is objectively reasonable. The types of "cause" that warrant an employee's termination include an employee's inattention to his or her duty to look after the employer's best interests or performance of an action inconsistent with the employer-employee relationship. Any action by an employee that injures or tends to injure the employer's business, interests, or reputation will justify dismissal. Actual loss is not essential; it is sufficient if, from the circumstances, it appears that the [employer] has been, or is likely to be, damaged by the acts of which complaint is made.

We have concluded that an employee has been terminated for cause if the employee's termination stems from a job-related ground. A job-related ground includes any act that is inconsistent with the continued existence of the employer-employee relationship. Thus, an employee has been terminated for cause if the termination stems from the employee's failure to follow a supervisor's directions, poor job performance, or failure in the execution of assigned duties.

*Lawrence v. Rawlins*, 2001 WL 76266, at *5 (internal citations and quotations omitted).

Mr. Jennings argues the City and the BOMA failed to "relate Chief Jennings's termination to its 'cause.'" In taking this position, Mr. Jennings seems to ignore the City's letter dated November 12, 2009, which stated that Mr. Jennings was being suspended for "Dereliction of Duties/Negligence." The City then listed eleven instances of Mr. Jennings' dereliction of duty and/or negligence in performing his duties.

The reasons the City lists in support of its decision to suspend and ultimately terminate Mr. Jennings are objectively reasonable and stem from job-related grounds. *Lawrence v. Rawlins*, 2001 WL 76266, at *5. The transcripts from the workshop and subsequent hearings support the trial court's findings that Mr. Jennings was suspended and terminated primarily due to his failure to address Smithville's drug and crime problems to the satisfaction of the City and BOMA, even after the BOMA hired two additional officers for this specific purpose. Several aldermen stated they had spoken with Mr. Jennings at different times during his tenure as Chief of Police about their concerns with the drug and crime problems in the City. The record is unequivocal that the City and BOMA were dissatisfied with Mr. Jennings' efforts to address these problems as well as with his overall job performance as the Smithville Chief of Police.

After reviewing the transcripts of the workshop and subsequent hearings, we cannot say the City and BOMA's decision to terminate Mr. Jennings was in violation of constitutional or statutory provisions; exceeded statutory authority; resulted from an unlawful procedure; was arbitrary or capricious; or was unsupported by material evidence. *See Demonbreun v. Metropolitan Bd. of Zoning Appeals*, 206 S.W.3d at 46 (action of the administrative body may be reversed or modified only upon a determination that the action satisfies one of these five factors). We therefore conclude the trial court did not abuse its discretion in dismissing Mr. Jennings' petition for writ of certiorari. *See Guess v. City of Manchester*, 2010 WL 4629594, at *5 ((Tenn. Ct. App. Nov. 15, 2010) (administrative decision must be upheld if any material evidence exists to justify it).

## C. THE WORKSHOP TRANSCRIPT IS PART OF THE "PROCEEDINGS IN THE CAUSE"

Mr. Jennings next makes the argument that the trial court erred in considering the transcript of the workshop on September 14, 2009, and that this transcript should not be a part of the record in this case. Mr. Jennings cites Tennessee Code Annotated section 27-9-109 in support of his position. This statute, entitled "Transcript of proceedings," provides:

> (a) Immediately upon the grant of a writ [of certiorari], the board or commission shall cause to be made, certified and forwarded to such court a complete transcript of the proceedings in the cause, containing also all the proof submitted before the board or commission.

The term "proceedings" is not defined by the statute, and Mr. Jennings does not explain why the transcript of the workshop should be excluded from the record. The City and BOMA set forth the concerns they had with Mr. Jennings' performance during the workshop on September 14, and the concerns they raised at the workshop led to the November 12 letter and to the ultimate decision to terminate Mr. Jennings' employment with the City. The workshop was conducted by the same aldermen who ultimately voted to terminate Mr. Jennings on December 7, and the transcript of the December 7 hearing referred to what was discussed during the workshop. We believe it was entirely appropriate for the trial court to consider the transcript from the workshop. *See B & B Enterprises of Wilson Co.*, 2004 WL 2916141, at *4 (planning commission erred in failing to submit to reviewing court transcript of all meetings discussing subdivision at issue, especially where missing transcripts provided reasons for commission's decision).

## V. Conclusion

For the reasons stated above, we affirm the trial court's decision to deny Mr. Jennings relief and to dismiss his complaint with prejudice. Costs shall be taxed to Mr. Richard Jennings, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE